United States Courts
Southern District of Texas
FILED
*November 22, 2024*
Nathan Ochsner, Clerk of Court

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ' |
| v. | ' CRIMINAL NO. **4:24-cr-00603** |
| **DONALD SCHUBERT,**<br>**Defendant.** | ' |

### INFORMATION

THE UNITED STATES CHARGES:

### COUNT ONE
(Conspiracy – 18 U.S.C. § 371)

#### Introduction

At all times material to this Information:

1. "Company #1," an entity whose identity is known to the United States, was a U.S. energy company based in the Southern District of Texas. Company #1 purchased oil and gas products from energy producers and sold them to end users in the United States and Mexico.

2. "Company #2," an entity whose identity is known to the United States, was a U.S. energy company based in the Southern District of Texas, engaged in the business of marketing, trading, and transportation of energy products in the United States, Canada, and Mexico. Company #2 acquired Company #1's propane business in or around February 2020.

3. At all relevant times, Defendant **DONALD SCHUBERT** ("**SCHUBERT**"), a resident of the Southern District of Texas, worked as an executive in the oil and gas industry. From in or around 2014 until in or around February 2020, Defendant **SCHUBERT** oversaw the marketing and sale of propane products at Company #1. After Company #2 acquired Company #1's propane business in or around February 2020, Defendant **SCHUBERT** became an executive

-1-

overseeing Company #2's marketing and sale of propane products until in or around October 2022. Among other things, Defendant **SCHUBERT**'s responsibilities at Company #1 and Company #2 included representing Company #1 and Company #2 in negotiating brokerage fees for propane transactions and approving invoices submitted by brokers in connection with propane sales.

4. "Co-Conspirator #1," an individual whose identity is known to the United States, is a Mexican citizen and U.S. lawful permanent resident who resides in the Southern District of Texas. Since at least 2016, Co-Conspirator #1 has been an energy consultant specializing in U.S.-Mexico trade issues.

5. "Company #3," an entity whose identity is known to the United States, was a limited liability corporation owned and controlled by Co-Conspirator #1. Co-Conspirator #1 established Company #3 in Texas in or around February 2016 to broker deals to sell propane products to customers in Mexico. From in or around January 2017 through in or around February 2020, Company #3 received payments from Company #1 in exchange for providing brokerage services for Company #1's propane business in Mexico. After Company #1 sold its propane business to Company #2 in or around February 2020, Company #3 provided similar services to Company #2 and received similar brokerage fees.

6. "Company #4," an entity whose identity is known to the United States, was a limited liability corporation organized in the state of Texas in or around November 2017.

7. "Relative #1," an individual whose identity is known to the United States, was a resident of the Southern District of Texas and a close relative of Defendant **SCHUBERT**. Relative #1 was the registered director, managing member, and agent of Company #4.

8. "Company #5," an entity whose identity is known to the United States, was a Pennsylvania corporation engaged in the retail propane business. Beginning in or around January

2016 and continuing until in or around September 2022, Company #5 purchased propane products from Defendant **SCHUBERT**'s employers, first Company #1 and later Company #2.

### The Conspiracy

9. Beginning in or around January 2016 and continuing through in or around October 2022, in the Southern District of Texas and elsewhere, the defendant

**DONALD SCHUBERT**,

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly conspire, confederate, and agree with Co-Conspirator #1 and others known and unknown to commit certain offenses against the United States, that is: to knowingly and with the intent to defraud, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowingly transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme and artifice, in violation of Title 18, United States Code, Section 1343.

### Purpose of the Conspiracy

10. The purpose of the conspiracy was for **SCHUBERT**, Co-Conspirator #1, and other co-conspirators (a) to enrich themselves by (1) fraudulently inflating brokerage fees charged by Company #3 to Company #1 and Company #2, a significant portion of which was transferred for **SCHUBERT**'s personal benefit in exchange for **SCHUBERT** directing business to Company #3; (2) paying **SCHUBERT** kickbacks in the form of purported "commissions" from Company #5 for the products that Company #5 purchased from Company #1 and Company #2; and (3) using Company #4 to secure fraudulently a loan as part of the Paycheck Protection Program ("PPP"); and (b) to conceal their fraudulent and unlawful activities from Company #1 and Company #2.

## Manner and Means of the Conspiracy

11. The manner and means by which **SCHUBERT** and his co-conspirators sought to accomplish and did accomplish the purposes of the conspiracy included, but were not limited to, the following, while in the Southern District of Texas and elsewhere:

12. Beginning in or around November 2017 and continuing through in or around October 2022, Defendant **SCHUBERT**, Co-Conspirator #1, and other co-conspirators agreed to engage and did engage in a scheme to defraud Company #1 and Company #2 by paying kickbacks to Defendant **SCHUBERT**, including through inflated brokerage fees charged by Company #3. Specifically, in exchange for Defendant **SCHUBERT** directing business from Company #1 and Company #2 to Company #3, Company #3 sent a substantial portion of the funds that it received from those companies to an account held in the name of Company #4 as kickbacks for the personal benefit of Defendant **SCHUBERT**.

13. Defendant **SCHUBERT**, Co-Conspirator #1, and other co-conspirators inflated the brokerage fees on the invoices that Company #3 submitted to Company #1 and Company #2 to fund the kickbacks Company #3 paid to Company #4 for Defendant **SCHUBERT**'s benefit.

14. Defendant **SCHUBERT**, Co-Conspirator #1, and other co-conspirators agreed to and did falsely represent to Company #1 and Company #2 that all fees listed in Company #3's invoices and charged by Company #3 were for legitimate services when in fact a substantial portion was to be used and was used to pay kickbacks to Company #4 for Defendant **SCHUBERT**'s benefit.

15. Each payment from Company #1 and Company #2 to Company #3 was made via wire transfer, which resulted in a wire communication sent from the state of Texas through financial institutions located in New York, among other locations.

16. Beginning in or around January 2016 and continuing until in or around September 2022, **SCHUBERT** and other co-conspirators agreed that Company #5 would pay and did pay **SCHUBERT** a $0.01 per gallon kickback on all propane products that Company #1 and Company #2 sold to Company #5.

17. Each payment from Company #5 to **SCHUBERT** was made via either wire transfer or check deposit to a personal bank account held in the name of **SCHUBERT** and Relative #1.

18. In or around March 2021, **SCHUBERT** and other co-conspirators agreed to use Company #4 and did use Company #4 to submit a materially false application for a PPP loan. The loan application materials falsely represented that Company #4 was an oil and gas consulting company with legitimate business expenses, including payroll expenses. The funds from the PPP loan were transferred into an account in the name of Company #4 and were used for the personal benefit of **SCHUBERT** and others, rather than for a legitimate business purpose. The PPP loan for Company #4 was approved in or around March 2021 and later forgiven, in full and with interest, in or around October 2021.

19. From the beginning of the conspiracy and continuing, Defendant **SCHUBERT**, Co-Conspirator #1, and other co-conspirators agreed to and did engage in acts to conceal the scheme, including using Company #4, a purported consulting company controlled by Relative #1, to disguise the true nature of the kickbacks and make them appear to be legitimate business expenses.

### Overt Acts

20. In furtherance of the conspiracy and to achieve the objects thereof, Defendant **SCHUBERT** and at least one of the co-conspirators committed and caused to be committed, in the Southern District of Texas and elsewhere, at least one of the following overt acts, among others:

21. On or about November 21, 2017, Defendant **SCHUBERT** incorporated Company #4 as a limited liability corporation, with Relative #1 listed as the registered director, managing member, and agent.

22. On or about November 29, 2017, Defendant **SCHUBERT** opened a bank account in the name of Company #4, with Relative #1 listed as an authorized signer ("Company #4 Account").

23. On or about February 4, 2019, Defendant **SCHUBERT** sent an email to Co-Conspirator #1 asking Co-Conspirator #1 to prepare an invoice for the total amount of propane that Company #1 had delivered to a customer in January 2019.

24. On or about February 4, 2019, Co-Conspirator #1 sent Defendant **SCHUBERT** an email requesting payment on an attached invoice totaling $120,742.62 and representing that the fees were all for legitimate services.

25. On or about February 4, 2019, Defendant **SCHUBERT** forwarded the email and invoice referenced in paragraph 20 to another Company #1 employee and wrote "I approve this invoice."

26. On or about February 6, 2019, based on the approval authorized by Defendant **SCHUBERT,** Company #1 sent a wire transfer to Company #3 in the amount of $120,742.62 from Company #1.

27. On or about February 6, 2019, Co-Conspirator #1 caused Company #3 to send a wire transfer in the amount of $57,746.47 to the Company #4 Account.

All in violation of Title 18, United States Code, Section 371.

## NOTICE OF CRIMINAL FORFEITURE
(18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c))

1. Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), the United States gives notice to the defendant,

**DONALD SCHUBERT**,

that in the event of his conviction of Count One of this Information, the United States will seek forfeiture of all property, real or personal, which constitutes or is derived from proceeds traceable to the conspiracy.

2. The United States also gives notice that it will seek a money judgment against the defendant.

3. In the event that one or more conditions listed in Title 21, United States Code, Section 853(p) exist, the United States will seek to forfeit any other property of the defendant up to the amount of the money judgment.

Alamdar S. Hamdani
United States Attorney
Southern District of Texas

By: *[signature]*
Robert S. Johnson
Assistant United States Attorney
Southern District of Texas
rjohnson3@usa.doj.gov
(713) 567-9706

Glenn S. Leon
Chief, Fraud Section
Criminal Division
United States Department of Justice

*[signature]* for:
Lindsey D. Carson
Trial Attorney
Criminal Division, Fraud Section
lindsey.d.carson@usdoj.gov
(202) 514-1897